IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| RON PETERSON, as Administrator of the Estate of JONATHAN PETERSON; RON PETERSON as Administrator of the Estate of JONATHAN PETERSON on behalf of RON PETERSON; RON PETERSON, as Administrator of the Estate of JONATHAN PETERSON on behalf of LINDA PETERSON; and RON PETERSON, as Administrator of the Estate of JONATHAN PETERSON on behalf of KALI PETERSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) NO. 3:14-cv-118 <br> COMPLAINT |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

## JURISDICTION, PARTIES AND VENUE

1.     The action arises under the Federal Tort Claims Act; 28 U.S.C. §2671-2680, 28

       U.S.C. §1346(b); 28 U.S.C. §1402(b); and 28 U.S.C. §2401(b).

2.     Ron Peterson is the administrator of the Estate of Jonathan Peterson by Letters of

       Appointment dated February 13, 2012 filed in probate case number ESPR 005110

       in District Court in Des Moines County, Iowa.

3.     Ron and Linda Peterson were the natural parents of Jonathan Peterson and at all

       times material hereto were residents of Burlington, Des Moines County, Iowa.

4.    Kali Peterson is the minor daughter of Jonathan Peterson and a resident of Porter, Porter County, Indiana.

5.    At all times material hereto, the United States of America, through its agent, Community Health Centers of Southeastern Iowa, Inc. ("CHC") employed or had acting as an agent Dennis Miller, D.O. ("Dr. Miller") a physician licensed to practice medicine in Iowa and specializing in family practice medicine in Burlington, Des Moines County, Iowa, as well as other doctors, nurses, and health care providers who provided care and treatment to Jonathan Peterson in Burlington, Des Moines County, Iowa. These employees and/or agents acted at all times material to this action on behalf of their employer and/or principle, the United States of America, and within the scope of their employment or agency.

6.    On January 9, 2014, a federal tort claim was filed on behalf of Ron, Linda, and Kali Peterson individually as well as a claim from Ron Peterson as Administrator of the Estate of Jonathan Peterson pursuant to 28 U.S.C. §2672.

7.    The Department of Health and Human Services has not made a final disposition of said claim.

8.    By statute, this action may be instituted in federal court as more than six months have passed without the Department of Health & Human Services making a final disposition of the claim pursuant to 28 U.S.C. §2675.

9.    Venue is appropriately placed here under 28 U.S.C. §1402(b).

## STATEMENT OF THE FACTS

10.   On February 23, 1995, the Iowa Board of Medical Examiners ("The Board") directed its Executive Director to file a Complaint and a Statement of Charges against Dr. Miller alleging that Dr. Miller provided substandard care to numerous patients from early 1989 until at least late 1993.

11.   On November 29, 1995, The Board found that Dr. Miller "repeatedly provided substandard care to numerous patients from early 1989 until at least late 1993" and placed Dr. Miller on probation for two years.

12.   On August 6, 2007, at the direction of The Board, Dr. Miller voluntarily stopped practicing medicine.

13.   The Board noted that Dr. Miller had completed a comprehensive physical, neuropsychological and substance abuse evaluation, which concluded that Dr. Miller "suffers from a depressive disorder and probable alcohol abuse and he was not fit to practice medicine with reasonable skill and safety at that time."

14.   On December 12, 2007, The Board "charged Dr. Miller with substance abuse, improper prescribing, sexual misconduct, violating appropriate physician-patient boundaries and failure to appropriately respond to a young female who suffered from a drug overdose."

15.   On July 10, 2008, Dr. Miller entered into a Settlement Agreement with The Board and his Iowa medical license was indefinitely suspended.

3

16.     On April 16, 2009, The Board reinstated Dr. Miller but noted that he was "prohibited from prescribing any medications to himself and family members, from socializing with patients and from prescribing human growth hormone. He was also required to complete a Board-approved prescribing course and a course on boundaries and professionalism. Dr. Miller was also placed on indefinite probation subject to numerous monitoring requirements, his practice was limited to a Board-approved practice plan and he was issued a public reprimand and ordered to pay a $5,000 fine."

17.     On December 6, 2011, Jonathan Peterson ("Peterson") was working at a construction job site when he slipped and accidentally shot a nail from a nail gun into his left distal femur.

18.     Peterson was transported to Great River Medical Center ("Great River") in Burlington, Iowa by ambulance where Levi Gause, M.D. ("Dr. Gause") proceeded to remove the nail, debride Peterson's left thigh, and perform an arthrotomy on Peterson's left knee joint.

19.     Peterson was discharged from Great River on December 7, 2011.

20.     On December 26, 2011, Peterson was transported back to Great River due to complaints of dyspnea and mid back pain.

21.     Peterson was originally seen by James Vandenberg, M.D. ("Dr. Vandenberg") at 2150, who had a clinical impression of acute dyspnea and pulmonary embolus.

4

22.    Dr. Vandenberg ordered, among other things, an ANGIO CHEST W AND OR WO CONTRAST and began administering Heparin to Peterson.

23.    At 2218 on December 26, 2011, labs revealed that Peterson had an INR of 1.03.

24.    Gregory Naugher, M.D. ("Dr. Naugher") initially reviewed, via teleradiology, the ANGIO CHEST W AND OR WO CON with impressions of "acute thromboemboli bilaterally without evidence of right heart strain." Dr. Naugher then faxed his findings to the ER room at 2346, and subsequently phoned Dr. Vandenberg.

25.    At 2349 on December 26, 2011, Dr. Vandenberg admitted Peterson to Great River's inpatient unit under the care of Irwin Clavel, M.D. ("Dr. Clavel").

26.    A DUPLEX EXT VENOUS BILAT LOWER test was performed on December 27, 2011 and was interpreted by Joseph Marshall, M.D. with the impression of "1. Right leg: No DVT 2. Left leg: Occlusive deep venous thrombosis from the distal superficial femoral vein into the posterior tibial vein."

27.    On December 27, 2011, Peterson was examined by Dr. Clavel who noted that "for pulmonary embolus, we are giving him Lovenox and Coumadin. He also has an extensive deep venous thrombus on his left leg."

28.    On December 28, 2011, at 1053, labs revealed that Peterson had an INR level of 1.31.

29.    Peterson was discharged on December 29, 2011.

5

30.   Peterson's last INR test before discharge, at 0630 on December 29, 2011, revealed an INR level of 1.27.

31.   Peterson's general discharge instructions were to attend a January 4, 2012, appointment "with Dr. Gause for Lovenox mgt/Coumadin mgt" and "Anticoagulation follow-up test: inr 2-3 days stop Lovenox if INR is 2 or more, fax report to community."

32.   Peterson was also given Coumadin discharge instructions that noted that "My protime/INR goal is between 2 and 3."

33.   CHC was copied on Dr. Clavel's discharge summary, where Dr. Clavel noted "he will be followed by Dr. Hadden at his request. However, at this time she is not available to make the schedule. Therefore, he will first be seen at CHC to follow his anticoagulation and he will call Great River for appointment with Dr. Hadden."

34.   In Dr. Clavel's December 29, 2011, discharge summary he further noted that his follow up instructions were to "Follow up with Community Health Care in one week, then with Dr. Hadden. INR in 2 to 3 days."

35.   On January 2, 2012, Peterson had INR testing at Great River, which revealed an INR level of 1.13.

36.   On January 4, 2012, Peterson met with Dr. Miller at the CHC because, according to CHC records, Peterson "needs INR regulation" and because "hospital refers INR."

37.   After examination, Dr. Miller's recommended treatment consisted of "1.) poof-
      hospital (PE-DVT); 2.) lisinopril 10 igd, ASA 81mg igd, Plan warfarin 5mg ID x 6
      months."

38.   Dr. Miller did not check Peterson's INR level despite the fact that it was an
      option in CHC's "In House Order Form," and did not continue to refill
      Peterson's prescription for Lovenox.

39.   On January 9, 2012, Linda Peterson called CHC and left a message "to inquire
      about order for pt. PT/INR @ GRMC."

40.   On January 9, 2012, Dr. Miller ordered that Peterson's INR be tested.

41.   CHC notes indicate that Jonathan Peterson was called back on January 9, 2012,
      "and pt. is aware order was faxed and they need to call GRMC.....to set up apt. @
      Day Hospital."

42.   On January 10, 2012, at 1056 CHC employee Debbie Roller ("Roller") received a
      voicemail from Linda Peterson noting that "Dr. Miller wanted him to go to
      GRMC protime clinic. You called last night stating the order would be there, they
      called the clinic and they said they did not have the order. Are you going to call
      and tell them how to regulate it or to go to protime clinic itself?"

43.   At 1815 on January 10, 2012, Dr. Miller indicated that "we want him to go to the
      protime clinic itself."

44.   On January 11, 2012, at 1123 Roller faxed an anticoagulation order from Dr.
      Miller to Great River's Anticoagulation Clinic noting that Peterson's Target INR

range was 2-3 for six months and that he was to be tested "weekly first month, then monthly."

45.   On January 11, 2012, at 1131 Roller "left msg. on pts phone that order was faxed to the clinic so it should be set up. He can contact them for further direction on what he needs to do. Also did not see that we had received any results from them. FYI order was faxed today found in scan pile."

46.   On January 12, 2012, CHC employee Lisa Babcock noted that "Pt's mother called and stated that GRMC still doesn't have order for PT/INR."

47.   Babcock then noted that she "called GRMC, Laura @ day hospital confirmed they had received the order and pt just needed to call and schedule the apt."

48.   Peterson was found dead in his bed on January 12, 2012 by his mother Linda.

49.   Babcock noted that she "called pt. again to let them know they needed to call GRMC and schedule apt....Pt. mother stated 'he has passed away.'"

50.   Peterson's cause of death was listed on his Certificate of Death as "pulmonary thromboembolism, deep vein thrombosis-left leg, impact of the left leg with a nail gun while at work place."

## CAUSES OF ACTION

### DIVISION I: The United States of America (Dr. Miller)

### Count 1: Ron Peterson, as Administrator of the Estate of Jonathan Peterson

Ron Peterson, as Administrator of the Estate of Jonathan Peterson for the

Estate's cause of action against the United States of America through its employee or agent, Dr. Miller, states:

51. Plaintiff hereby incorporates by reference paragraphs 1-50 herein.

52. From the time that Jonathan Peterson was first seen by Dr. Miller, Dr. Miller had a duty to provide Jonathan Peterson with proper medical interpretations, diagnosis, attention and doctor-patient relationship. Dr. Miller negligently failed to perform this duty.

53. Dr. Miller was negligent in that he failed to bring to the service of Jonathan Peterson that degree of knowledge, skill, care and attention ordinarily possessed and exercised by similar physicians under like circumstances.

54. Dr. Miller was negligent in:

   a) not testing Peterson's INR level at Peterson's January 4, 2012 office visit to CHC;

   b) not refilling Peterson's Lovenox prescription;

   c) failing to order INR testing for Peterson in a timely manner;

   d) failing to adequately assess Peterson's need for additional anti-coagulation treatment;

   e) failing to properly supervise CHC staff to ensure that the order for INR testing was transmitted to Great River in a timely manner;

   f) failing to establish a medically sound anti-coagulation regimen and treatment plan for Peterson at discharge; and

g)   depriving Peterson of the opportunity to receive early and proper treatment and a chance of realizing the resulting increase in life expectancy and physical and mental comfort.

55.   As a direct and proximate result of the negligence of the United States of America through its employee or agent, Dr. Miller, The Estate of Jonathan Peterson has:

a)   incurred medical expenses over and above those otherwise necessary;

b)   suffered lost wages;

c)   suffered pre-death loss of function of the mind and body;

d)   suffered pre-death physical and mental pain and suffering;

e)   lost the present value of the additional amounts Jonathan Peterson would reasonably be expected to have accumulated as a result of his own effort if he had lived out the term of his natural life;

f)   has incurred funeral expenses;

g)   lost the present worth and opportunity to receive early and proper care and treatment for his condition and a chance of realizing any resulting gain in life expectancy and physical and mental comfort; and

h)   has incurred other damages.

WHEREFORE, The Estate of Jonathan Peterson prays for judgment against the United States of America in the amount of Three Million Dollars ($3,000,000) to

compensate the estate for its damages, together with costs and interest as provided by law.

### Count 2: Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Ron Peterson

Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Ron Peterson for his cause of action against the United States of America through its employee or agent, Dr. Miller, states:

56.     Plaintiff hereby incorporates by reference paragraphs 1-50 and 52-54 herein.

57.     As a direct and proximate result of the negligence of the United States of America through its employee or agent, Dr. Miller, Ron Peterson has:

    a)     been deprived of the services, companionship, and society of his son, Jonathan Peterson;

    b)     and will in the future be deprived of the services, companionship, and society of his son, Jonathan Peterson; and

    c)     incurred other damages.

WHEREFORE, Ron Peterson, as Administrator of the Estate of Jonathan Peterson on behalf of Ron Peterson, prays for judgment against the United States of America in the amount of Two Hundred and Fifty Thousand Dollars ($250,000) to compensate him for his damages together with costs and interest as provided by law.

### Count 3: Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Linda Peterson

11

Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Linda Peterson, for her cause of action against the United States of America through its employee or agent, Dr. Miller, states:

58.    Plaintiff hereby incorporates by reference paragraphs 1-50 and 52-54 herein.

59.    As a direct and proximate result of the negligence of the United States of America through its employee or agent, Dr. Miller, Linda Peterson has:

    a)      been deprived of the services, companionship, and society of her son Jonathan Peterson;

    b)      and will in the future be deprived of the services, companionship, and society of her son Jonathan Peterson, and

    c)      incurred other damages.

WHEREFORE, Ron Peterson, as Administrator of the Estate of Jonathan Peterson on behalf of Linda Peterson, prays for judgment against the United States of America in the amount of Two Hundred and Fifty Thousand Dollars ($250,000) to compensate her for her damages together with costs and interest as provided by law.

### Count 4: Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Kali Peterson

Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Kali Peterson for her cause of action against the United States of America through its employee or agent, Dr. Miller, states:

60.    Plaintiff hereby incorporates by reference paragraphs 1-50 and 52-54 herein.

61.    As a direct  and proximate result of the negligence of the United States of America though its employee or agent, Dr. Miller, Kali Peterson has:

    a)     been deprived of the services, companionship, and society of her father, Jonathan Peterson;

    b)     and will in the future be deprived of the services, companionship, and society of her father, Jonathan Peterson;

    c)     has been deprived of the present value of the amount of financial support which Jonathan Peterson would have contributed to Kali but for Jonathan Peterson's death; and

    d)     incurred other damages.

WHEREFORE, Ron Peterson, as Administrator of the Estate of Jonathan Peterson on behalf of Kali Peterson, prays for judgment against the United States of America in the amount of Seven Hundred and Fifty Thousand Dollars ($750,000) to compensate her for her damages, together with costs and interest as provided by law.

## DIVISION II: The United States of America (CHC)

### Count 1: Ron Peterson, as Administrator of the Estate of Jonathan Peterson

Ron Peterson, as Administrator of the Estate of Jonathan Peterson for the Estate's cause of action against the United States of America through its representative, employee or agent, CHC, states:

62.    Plaintiff hereby incorporates by reference paragraphs 1-50 herein.

63.   From the time that Jonathan Peterson was first seen by CHC through its agents, representatives, officers and/or employees, until he left the care of CHC, it was the duty of CHC, through its servants, employees and/or agents to provide Jonathan Peterson with proper medical examination, diagnosis, treatment, care and attention, and a continuous hospital-patient relationship. CHC, through its servants, employees and/or agents negligently failed to perform this duty

64.   CHC through its servants, employees and/or agents was negligent in that it failed to bring to the service of Jonathan Peterson that degree of knowledge, skill, care, and attention ordinarily possessed and exercised by similar medical clinics under like circumstances.

65.   CHC, through its servants, employees and/or agents was negligent in:

   a)   not testing Peterson's INR level at Peterson's January 4, 2012 office visit to CHC;

   b)   not refilling Peterson's Lovenox prescription;

   c)   failing to order INR testing for Peterson in a timely manner;

   d)   failing to adequately assess Peterson's need for additional anticoagulation treatment;

   e)   failing to fax the order for INR testing to Great River in a timely manner;

   f)   failing to adequately supervise Dr. Miller given his documented history of disciplinary problems with the Iowa Board of Medical Examiners.

14

g)      failing to institute protocol to ensure that medical orders get processed in a timely and reliable manner;

h)      failing to establish a medically sound anti-coagulation regimen and treatment plan for Peterson at discharge; and

i)      depriving Peterson of the opportunity to receive early and proper treatment and a chance of realizing the resulting increase in life expectancy and physical and mental comfort.

66.     CHC is vicariously liable for the negligent acts of its servants, employees and/or agents under the doctrine of respondeat superior, corporate liability and obstensible agency.

67.     As a direct and proximate result of the negligence of the United States of America through its employee or agent CHC, The Estate of Jonathan Peterson has:

a)      incurred medical expenses over and above those otherwise necessary;

b)      suffered lost wages;

c)      suffered pre-death loss of function of the mind and body;

d)      suffered pre-death physical and mental pain and suffering;

e)      lost the present value of the additional amounts Jonathan Peterson would reasonably be expected to have accumulated as a result of his own effort if he had lived out the term of his natural life;

f)      has incurred funeral expenses;

15

g)   lost the present worth and opportunity to receive early and proper care and treatment for his condition and a chance of realizing any resulting gain in life expectancy and physical and mental comfort; and

h)   has incurred other damages.

WHEREFORE, The Estate of Jonathan Peterson prays for judgment against The United States of America in the amount of Three Million Dollars ($3,000,000) to compensate the estate for its damages together with costs and interest as provided by law.

### Count 2:  Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Ron Peterson

Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Ron Peterson for his cause of action against the United States of America through its employee or agent, CHC, states:

68.   Plaintiff hereby incorporates by reference paragraphs 1-50 and 63-66 herein.

69.   As a direct and proximate result of the negligence of the United States of America through its employee or agent, CHC, Ron Peterson has:

a)   been deprived of the services, companionship, and society of his son, Jonathan Peterson;

b)   and will in the future be deprived of the services, companionship, and society of his son, Jonathan Peterson; and

c)   incurred other damages.

WHEREFORE, Ron Peterson, as Administrator of the Estate of Jonathan Peterson

16

on behalf of Ron Peterson, prays for judgment against the United States of America in the amount of Two Hundred and Fifty Thousand Dollars ($250,000) to compensate him for his damages together with costs and interest as provided by law.

### Count 3: Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Linda Peterson

Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Linda Peterson, for her cause of action against the United States of America through its employee or agent, CHC, states:

70. Plaintiff hereby incorporates by reference paragraphs 1-50 and 63-66 herein.

71. As a direct and proximate result of the negligence of the United States of America through its employee or agent, CHC, Linda Peterson has:

    a) been deprived of the services, companionship, and society of her son Jonathan Peterson;

    b) and will in the future be deprived of the services, companionship, and society of her son Jonathan Peterson, and

    c) incurred other damages.

WHEREFORE, Ron Peterson, as Administrator of the Estate of Jonathan Peterson on behalf of Linda Peterson, prays for judgment against the United States of America in the amount of Two Hundred and Fifty Thousand Dollars ($250,000) to compensate her for her damages together with costs and interest as provided by law.

17

**Count 4: Ron Peterson, as Administrator of the Estate of Jonathan Peterson,
on behalf of Kali Peterson**

Ron Peterson, as Administrator of the Estate of Jonathan Peterson, on behalf of Kali Peterson for her cause of action against the United States of America through its employee or agent, CHC, states:

72.    Plaintiff hereby incorporates by reference paragraphs 1-50 and 63-66 herein.

73.    As a direct and proximate result of the negligence of the United States of America though its employee or agent, CHC, Kali Peterson has:

   a)    been deprived of the services, companionship, and society of her father, Jonathan Peterson;

   b)    and will in the future be deprived of the services, companionship, and society of her father, Jonathan Peterson;

   c)    has been deprived of the present value of the amount of financial support which Peterson would have contributed to Kali but for Peterson's death; and

   d)    incurred other damages.

WHEREFORE, Ron Peterson, as Administrator of the Estate of Jonathan Peterson on behalf of Kali Peterson, prays for judgment against the United States of America in the amount of Seven Hundred and Fifty Thousand Dollars ($750,000) to compensate her for her damages together with costs and interest as provided by law.

By _____
      James P. Hayes         AT0003309
      HAYES LORENZEN LAWYERS PLC
      Plaza Centre One, Suite 580
      125 S Dubuque Street
      Iowa City, IA 52240
      Telephone:  (319) 887-3688
      Facsimile: (319-887-3687
      E-mail: jhayes@hlplc.com

By _____
      Mike H. Biderman      AT 0011133
      E-mail: mbiderman@hlplc.com

By _____
      Karen A. Lorenzen      AT0004862
      E-mail: klorenzen@hlplc.com
      ATTORNEYS FOR PLAINTIFFS